Noretzel DAVENPORT, Petitioner,

v.

DISTRICT OF COLUMBIA RENTAL
HOUSING COMMISSION,
Respondent.

Dominic T. BROWN, Petitioner,

v.

DISTRICT OF COLUMBIA RENTAL
HOUSING COMMISSION,
Respondent,

Oliver Cowan, Intervenor.

Nos. 89–541, 89–563.

District of Columbia Court of Appeals.

Argued June 22, 1990.
Decided July 5, 1990.*

---

* The decision in this case was originally released as a Memorandum Opinion and Judgment on July 5, 1990. It is being published by direction of the court.

Eric M. Rome, Washington, D.C., for petitioner, Noretzel Davenport.

Dominic T. Brown, pro se.

Richard W. Luchs, for intervenor.

Charles L. Reischel, Deputy Corp. Counsel, filed a statement in lieu of brief, for respondent.

Before NEWMAN, BELSON and FARRELL, Associate Judges.

PER CURIAM:

Petitioners challenge the Decision and Order of the District of Columbia Rental Housing Commission upholding an order of the Rent Administrator that approved a 70 percent voluntary agreement between the tenants of Rittenhouse Apartments and the management of Rittenhouse Apartments (housing provider). *See* D.C.Code § 45–2525 (1990 Repl.). Petitioners contend, among other things, that the Rent Administrator committed the following reversible errors: 1) combining the signatures on three separate versions of the agreement to satisfy the requirements that 70 percent of tenants sign the agreement; 2) allowing the housing provider to submit additional signatures at the hearing; 3) disallowing the attempted withdrawal of any of the signatures; 4) denying the tenants' request for continuance; and 5) determining that the unit occupied by Dr. Putnam was a rental unit. We affirm.

In June 1986, the management of Rittenhouse, a 204–unit apartment building, proposed to its tenants a voluntary agreement for the purpose of changing the type of heating and air conditioning system in the building and of transferring the responsibility for payment of those services to the tenants. At that time, a number of tenants signed the agreement. The tenants then formed a liaison committee to negotiate the agreement. As a result of the negotiations, two addenda—dated July 2 and July 18—were made part of the agreement.

Taken together, the signatures on the three versions represented agreement by 70 percent of the tenants.

The housing provider submitted the voluntary agreement to the Rent Administrator for approval, but petitioners filed a petition challenging the validity of the agreement. After conducting a hearing on the objections raised by petitioners, the Rent Administrator approved the agreement.

D.C.Code § 45–2525 (1990 Repl.) provides in pertinent part:

(a) Seventy percent or more of the tenants of a housing accommodation may enter into a voluntary agreement with the housing provider:

(1) To establish the rent ceiling;

(2) To alter levels of related services and facilities; and

(3) To provide for capital improvements and the elimination of deferred maintenance (ordinary repair).

(b) The voluntary agreement must be filed with the Rent Administrator and shall include the signature of each tenant, the number of each tenant's rental unit or apartment, the specific amount of increased rent each tenant will pay, if applicable, and a statement that the agreement was entered into voluntarily without any form of coercion on the part of the housing provider. If approved by the Rent Administrator the agreement shall be binding on the housing provider and on all tenants.

 We find no merit to petitioners' contention that the agreement was not valid because the tenants whose signatures were counted to make up the 70 percent required for approval did not all sign the same version of the agreement. The two addenda did not change the central provisions of the voluntary agreement, but rather modified the agreement so as to enhance the rights of the tenants.[1] We find no error in the

---

1. The original agreement provided that if it was signed by the required number of tenants by July 1, 1986, the rents would be the same for the next three years (1987–1989). The July 2 addenda extended the deadline to July 12, 1986, provided the added guarantee that rental payments for 1990 and 1991 would not be increased by more than two percent of the current rent, and listed a few specific services and repairs that would be undertaken by management. The

Rent Administrator's ruling that because the three versions were substantially the same, they could be regarded as one agreement for purposes of D.C.Code § 45–2525. *See Totz v. District of Columbia Rental Accommodations Comm'n,* 412 A.2d 44, 46 (D.C.1980) (this court must give deference to an agency's interpretation of governing statute unless plainly erroneous). There is no inequity in the Rent Administrator's ruling because the later versions, being more beneficial to the tenants, did not impose new obligations upon the original tenant signatories. *Cf. Hershon v. Hellman Co.,* 565 A.2d 282, 284 (D.C.1989) (contract containing a term inconsistent with a term of an earlier contract between the same parties and regarding the same subject matter rescinds the inconsistent term in earlier contract).

■ We are also not persuaded by petitioners' argument that the Rent Administrator erred in allowing the housing provider to submit additional signatures after having ruled that submission of additional signatures is not permissible after the voluntary agreement is filed. The prospective application of a ruling on an issue of first impression is permissible where, as is the case here, the agency's determination that it should proceed in that fashion is prompted by equitable considerations that weigh against retroactive application. *See Securities & Exchange Comm'n v. Chenery Corp.,* 332 U.S. 194, 203, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995 (1947). *Cf. Mendes v. Johnson,* 389 A.2d 781, 789 (D.C.1978).

■ Petitioners next argue that tenants should have been allowed to withdraw their signatures because the housing provider engaged in fraud and misrepresentation. We do not agree. Rather, we are persuaded that the Rent Administrator's finding that petitioners failed to prove that the

housing provider engaged in coercion, misrepresentation or fraud was supported by substantial evidence. *See Citizens Ass'n of Georgetown v. District of Columbia Zoning Comm'n,* 402 A.2d 36, 41 (D.C. 1979) (this court must affirm agency's decision if supported by substantial evidence).[2]

■ We likewise find no merit in petitioners' argument that the Rent Administrator committed reversible error in denying their request for a continuance based on the recent retention of counsel. Under the circumstances, including in particular the fact that petitioners failed to request the continuance promptly after receiving notice of the hearing as required by 14 DCMR § 4014.3 (1989), the Rent Administrator did not abuse its discretion in denying the request. *See Ammerman v. District of Columbia Rental Accommodations Comm'n,* 375 A.2d 1060, 1063–64 (D.C.1977) (denial of request for continuance subject to reversal only upon a showing of abuse of discretion).

We need not decide here whether the Rent Administrator erred in ruling that Dr. Putnam's unit was a rental unit as defined by D.C.Code § 45–2503(33). Petitioners conceded at oral argument that even with the disallowance of one signature, the housing provider would still have enough signatures to meet the 70 percent requirement.[3] Accordingly, it is

ORDERED and ADJUDGED that the judgment appealed from be, and it hereby is, affirmed.

---

July 18 addendum merely added to the list of repairs and services that would be undertaken by management.

**2.** In reaching this finding, the Rent Administrator applied this court's opinion in *Bennett v. Kiggins,* 377 A.2d 57 (D.C.1977), *cert. denied,* 434 U.S. 1034, 98 S.Ct. 768, 54 L.Ed.2d 782 (1978), to define the elements of fraud.

**3.** Petitioners also contend that the tenants never had the minimum 14 days required to review the agreement prior to its submission for approval as required by 14 DCMR § 4213.4. Because this argument was not raised at the agency level, we decline to consider it here on appeal. *See District of Columbia v. Gray,* 452 A.2d 962, 964 (D.C.1982).